NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN ROSS SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>    Defendants. | No. 24cv10269 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Kevin Ross Smith ("Smith"), a prisoner confined in the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), filed an Amended Complaint[1] asserting claims under the Eighth Amendment[2] and Title II of the Americans with Disabilities Act

---

[1] The Court administratively terminated Smith's original complaint pursuant to Local Civil Rule 54.3(a) because he failed to pay the filing fee or submit a properly completed application to proceed without prepayment of fees under 28 U.S.C. § 1915(a). D.E. 5. Smith subsequently filed a Motion for Permission to Amend Complaint for Preliminary Injunctive Relief Pursuant to Federal Rule of Civil Procedure 65(a). D.E. 9. The Court will treat this motion as Smith's Amended Complaint, which contains a motion for preliminary injunctive relief. *Id.* ("Amended Complaint," "Am. Compl.," or "Motion for Preliminary Injunctive Relief"). An amended complaint replaces the original and renders the original null and void, unless the amended complaint "specifically refers to or adopts the earlier pleading." *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). The Amended Complaint refers only to the complete copy of the Federal Bureau of Prisons Clinical Guideline Manual attached to the original complaint. Am. Compl. at 8.

[2] The Court has federal question jurisdiction over constitutional challenges under 28 U.S.C. § 1331. The Court reserves the issue of whether to imply a damages remedy for an Eighth Amendment inadequate medical care claim against a federal actor in his individual capacity. *See Egbert v. Boule*, 596 U.S. 482, 492 (2022) (holding courts must resolve the question "whether there is any reason to think that Congress might be better equipped to create a damages remedy" before implying a damages remedy against a federal actor for violation of a constitutional right); *see also Cross v. Buschman*, No. 22-3194, 2024 WL 3292756, at *5 (3d Cir. July 3, 2024) (noting, in an appropriate case, the Third Circuit "should consider whether the administrative remedy

("ADA"), 42 U.S.C. § 12132 *et seq.*, against Defendants L.B. Kelly, G. Martin, and Dr. Marantz (the "Supervisor Defendants"), the Federal Bureau of Prisons ("BOP"), and Dr. Richard Dimonte. Am. Compl.  The Amended Complaint contains Smith's Motion for Preliminary Injunctive Relief under Fed. R. Civ. P. 65(a).  Smith also filed an application to proceed *in forma pauperis* ("IFP"), D.E. 7 ("IFP Application"), and a Motion Requesting Summons Be Served Pursuant to Fed. R. Civ. P. 4(c)(3).  D.E. 8 ("Motion for Service").  Finally, Smith filed a Motion Requesting Permission to Supplement, Amend, "Add to" His Initial Complaint for Preliminary Injunctive Relief Pursuant to Rule 65(a).  D.E. 11 ("Motion to Supplement" or "Supp. Am. Compl.").

Smith's IFP Application establishes his financial eligibility to proceed without prepayment of the filing fee.  The Court will therefore **GRANT** the IFP Application.  The Court will also **GRANT** Smith's Motion to Supplement.  The Court construes the motion as one to supplement Smith's Amended Complaint, D.E. 9, which replaced his Initial Complaint, D.E. 1.  Thus, the Court will screen the Amended Complaint, D.E. 9, as supplemented, D.E. 11, for *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B).

For the reasons below, the Court will **PROCEED** the Eighth Amendment deliberate indifference to serious medical need claim against Dr. Dimonte and **DISMISS** the Eighth Amendment claims against the Supervisor Defendants *without prejudice*.  The Court will construe the ADA claim as a claim under Section 504 of the Rehabilitation Act of 1973 ("RA") against the Federal Bureau of Prisons and **PROCEED** the claim.  The Court will direct service of summons and the Amended Complaint on Defendants and **ADMINISTRATIVELY TERMINATE** the

---

program used by the BOP precludes" monetary damages for Eighth Amendment inadequate medical care claims.)

2

Motion for Preliminary Injunctive Relief pending notice to adverse parties. *See* Fed. R. Civ. P. 65(a)(1).

I.  **BACKGROUND**

Smith is a federal prisoner who suffers from severe opioid use disorder, a chronic relapsing disease with significant economic, personal and public health consequences. Am. Compl. at 2. Smith was previously incarcerated in FCI Marianna, where he was unsuccessfully treated for his opioid use disorder with the medication naltrexone.[3] *Id.* at 3. Two years later, while still incarcerated in FCI Marianna, Smith started treatment under a medication-assisted-treatment program ("MAT Program"). *Id.* at 3, 8. Upon the recommendations of FCI Marianna's chief psychologist, clinical director, and Dr. Nikki Abu Gardner, Smith began treatment with buprenorphine. *Id.* at 3.

Smith was subsequently transferred[4] from FCI Marianna to FCI Fairton. *Id.* Dr. Richard Dimonte, without performing an individualized assessment of Smith's substance use disorder, determined Smith was stable on buprenorphine and recommended his transition to treatment with a different medication, naltrexone. *Id.* at 3, 6. According to BOP's clinical guidelines for the MAT Program,[5] when a person is stable on buprenorphine injections, transition to naltrexone without complete detoxification is not recommended. *Id.* at 6. Buprenorphine 300 mg injections

---

[3] Smith refers to drugs by their generic and brand names. The Court will use only the generic names: (1) naltrexone for the brand name Vivitrol (long-acting injection form) and (2) buprenorphine for the brand name Sublocade (extended-release injection form).
[4] Smith does not allege when his transfer occurred.
[5] Attachment Two to the Amended Complaint is an excerpt from the Federal Bureau of Prisons Clinical Guidance, Opioid Use Disorder: Diagnosis, Evaluation, and Treatment, August 2021. A complete copy of the Clinical Guidance is attached to the original complaint. Compl., Ex. 2. Attachment Three to the Amended Complaint is a TRULINCS message from Betty Smith to Smith, dated October 31, 2024, discussing safe transitions from buprenorphine to naltrexone.

are long-acting and can remain in a person's system ten months or longer. *Id.*[6] Therefore, Dr. Dimonte's prescribed course of action would require Smith to detoxify for up to ten months or more. *Id.* In the past, Smith was unable to detoxify long enough to begin treatment with naltrexone, which is why he was treated with buprenorphine. *Id.* at 6. At FCI Fairton, Defendants[7] denied Smith's request to continue treatment with buprenorphine in the MAT Program, without regard to his medical need and without justification. *Id.* at 3. Without buprenorphine, Smith will suffer painful physical withdrawal symptoms and increased risk of death by overdose upon his release from prison. *Id.* at 4-5.

Section 607 of the First Step Act of 2018[8] emphasizes the importance of expanding effective treatment options for incarcerated individuals and includes a goal of expanding access to medication-assisted-treatment ("MAT"). *Id.* at 8. Dr. Dimonte's "one-size fits all approach" to substance use disorder, prescribing only naltrexone, has allegedly caused over 100 individuals at FCI Fairton to relapse. *Id.*

In his supplement to the Amended Complaint, Smith brings a claim under Section 504 of the Rehabilitation Act.[9] Supp. Am. Compl. Smith alleges his Opioid Use Disorder ("OUD"), constitutes a disability under the RA. *Id.* at 2. As a person with a disability under the RA, Smith contends he is entitled to the benefit of medical treatment from the BOP, a federal agency. *Id.*

---

[6] Attachment One to the Amended Complaint is an article reproduced from the website Drugs.com: "How long does buprenorphine stay in your system?" Medically Reviewed by Leigh Ann Anderson, Pharm. D., last updated February 18, 2022.

[7] Smith alleges "the Defendant[s] listed denied Mr. Smith's continuation request . . . ." The Court construes this as an allegation that all Defendants named in the Amended Complaint denied his request to continue in the MAT Program on buprenorphine.

[8] Smith cites to Section 126 of the First Step Act, but his reference to expanding access to medically assisted treatment is found in Section 607. First Step Act, P.L. 115-391, 132 Stat. 5194, Section 607.

[9] 29 U.S.C. § 794(a).

Smith alleges the BOP's policy of treating all inmates with OUD with the medication naltrexone is discriminatory because inmates, like himself, who have severe OUD, do not receive appropriate treatment. *Id.* at 3. Defendants' blanket policy harmed Smith by discontinuing his MAT treatment with buprenorphine, which forced him to experience withdrawal and increased his risk of relapse and even death. *Id.* Smith's withdrawal symptoms, including heart palpitations, muscle spasms, anxiety, insomnia, and diarrhea, prevent him from fully participating in court-ordered treatment, such as the Residential Drug Treatment Program ("RDAP"). *Id.* at 3-4. Smith brings claims for permanent injunctive relief against Defendants in their official capacities. *Id.* at 5.

## II.   LEGAL STANDARD

District courts are required to review civil complaints filed by prisoners who have been granted IFP status, and *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(b). When reviewing claims for dismissal for failure to state a claim under § 1915(e)(2)(b)(ii), courts apply the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

A complaint must allege facts, not legal conclusions or mere recitation of the elements of a claim, to show the plaintiff's claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In sum, courts "must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint

contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023). Moreover, "[c]omplaints filed pro se should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 340 (3d Cir. 2011), *as amended* (Sept. 19, 2011) (quoting Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York*, 30 Fordham Urb. L.J. 305, 308 (2002)).

### III.    ANALYSIS

Smith raises three claims for relief: denial of access to the MAT Program by discriminating against Smith based on his disability of severe substance use disorder, in violation of Title II of the ADA (Count I); deliberate indifference to Smith's serious medical need in violation of the Eighth Amendment (Count II); and denial of access to the MAT Program by discriminating against Smith based on his disability of severe opioid use disorder, in violation of Section 504 of the RA (Count III). The Court construes Count II as alleged against the Defendants in their individual and official capacities.

#### A.    Smith States an Eighth Amendment Claim Against Dr. Richard Dimonte

The Eighth Amendment's prohibition of cruel and unusual punishments proscribes "punishments . . . which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) The Government's failure to provide medical care to inmates may result in their pain and suffering that serves no penological purpose. *Id.* Therefore, deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment. *Id.*

at 104.  A medical need is serious "if it has been diagnosed by a physician as requiring treatment." *McGinnis v. Hammer*, 751 F. App'x 287, 290 (3d Cir. 2018) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

"[T]here is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'"  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (quoting *United States ex. rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).  The distinction matters because "when medical care is provided, [courts must] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."  *Id.* (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).  This is the objective component of "the deliberate indifference prong of an adequacy of care claim."  *Id.* at 536.

There is also a subjective component of deliberate indifference, which involves a defendant's state of mind while providing inadequate care.  *Id.* at 535 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.13 (3d Cir. 1993)).  The subjective component may be shown where "prison officials . . . opt for 'an easier and less efficacious treatment' of the inmate's condition[.]"  *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).  The subjective component of deliberate indifference may also be shown when denial of reasonable requests for medical treatment expose the inmate "to undue suffering or the threat of tangible residual injury."  *Id.* (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).

The Amended Complaint, as supplemented, contains sufficient factual allegations to assert that Smith has a serious medical need of severe substance use [opioid] disorder, previously

7

diagnosed and treated with buprenorphine long-acting injections. Am. Compl. at 3. Based on allegations that Dr. Dimonte's treatment plan to transition Smith from buprenorphine to naltrexone is contrary to BOP's clinical guidelines for the MAT Program, *id.* at 3, 6, the Court is not required to presume Dr. Dimonte's treatment was proper. *See Pearson*, 850 F.3d at 537.

The objective component of the deliberate indifference element of Smith's Eighth Amendment claim is satisfied through allegations that Dr. Dimonte's treatment plan was devised without an individualized assessment of Smith's condition, and that the treatment plan is contrary to applicable clinical guidelines. Am. Compl. at 3. The subjective prong of deliberate indifference to the adequacy of care is also met by Smith's allegation that denial of his request to continue with buprenorphine, 300 mg injections, would cause him to suffer physical withdrawal symptoms for up to ten months, and put him at much higher risk for drug use relapse, and even overdose and death in the future. *Id.* at 5-6. The Eighth Amendment claim against Dr. Dimonte, therefore, may **PROCEED**.

    **B.**    **Smith Does Not State an Eighth Amendment Claim Against the Supervisor Defendants**

Smith seeks to hold the Supervisor Defendants liable for deliberate indifference to his serious medical need in violation of the Eighth Amendment because they failed to respond to his written requests to continue in the MAT Program after Dr. Dimonte prescribed his transition to naltrexone. *Id.* at 3. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits," and therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd on other grounds sub nom. Taylor v. Barkes*, 575

8

U.S. 822 (2015). *First*, a plaintiff may allege a supervisor enacted a policy, practice or custom, with deliberate indifference to the consequences, which directly caused the constitutional harm. *Id.* Failure to train or supervise allegations are subcategories of policy or practice liability. *Id.* *Second*, a plaintiff may state a claim by alleging a supervisor "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Smith's allegation that the Supervisor Defendants failed to respond to his written requests to remain in the MAT Program after Dr. Dimonte prescribed a different treatment plan is insufficient to state a claim. For liability to attach to supervisors, their knowledge and acquiescence in unconstitutional conduct must be contemporaneous to the misconduct. *Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)). Here, Smith appealed to the Supervisor Defendants after Dr. Dimonte changed his treatment plan, which is insufficient to allege their knowledge and acquiescence in Dr. Dimonte's alleged unconstitutional conduct. The Court will therefore **DISMISS** the Eighth Amendment claims against the Supervisor Defendants *without prejudice*.

      C.    **Title II of the ADA is Inapplicable to the Federal Government**

Smith alleges that Defendants violated Title II of the ADA because they denied his participation in the MAT Program due to his disability. FCI Fairton is a federal prison and the ADA is not applicable to the federal government. *See Ramos v. Raritan Valley Habitat for Humanity*, No. 16-1938, 2019 WL 4316575, at *5-6 (D.N.J. Sept. 12, 2019) (collecting cases). Therefore, the Court will **DISMISS** the ADA claims *with prejudice*.

### D. Smith States a Claim Under Section 504 of the Rehabilitation Act

Smith brings a claim under Section 504 of the RA in his Amended Complaint, as supplemented. Supp. Am. Compl. The substantive standards for liability under Title II of the ADA and Section 504 of the RA are largely the same, except that the RA has an additional requirement "that the violation was committed by a program . . . receiving 'Federal financial assistance.'" *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019) (quoting *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 762-63 (3d Cir. 2012) (quoting 29 U.S.C. § 794(a)) (internal citation omitted). The proper defendant to an RA claim under Section 504 is the program receiving federal financial assistance. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007). "The Bureau of Prisons is an agency of the Department of Justice, which is within the executive branch of the government." *Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. 2009).

"The Rehabilitation Act adopts the scheme of 'remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964,' 42 U.S.C. § 2000d *et seq.*, to remedy alleged violations of Section 504 by recipients of federal funding." *A.W.*, 486 F.3d at 803-04 (quoting 29 U.S.C. § 794a(a)(2)). "Congress . . . provided a private right of action under Section 504 by incorporating Title VI's 'remedies, procedures, and rights' into the statute." *Id.* at 804 (quoting *Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425-26 (3d Cir. 2004)).[10] "Causation standards differ between the ADA and RA: under the RA, the disability must be the

---

[10] Where "a plaintiff seeks compensatory damages as a remedy for violations of the RA . . . [h]e . . . must also demonstrate that . . . discrimination was intentional," a standard that can be satisfied by a showing of deliberate indifference. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (citation omitted).

10

sole cause of the discriminatory action, while the ADA only requires but-for causation." *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023).

BOP is a defendant in this action. Am. Compl. at 1. Accepting Smith's allegations as true, it is reasonable to infer Smith was denied access to treatment with buprenorphine in the MAT Program at FCI Fairton by reason of discrimination against him as a person with severe opioid use disorder. Smith's allegation that Dr. Dimonte recommended a less efficacious medication due to a belief that individuals with severe opioid use disorder are drug addicts who should not be treated with buprenorphine is sufficient to allege a discriminatory purpose. In further support of a reasonable inference of discrimination, Smith alleged Dr. Dimonte engaged in a "one-size-fits-all" approach to treating prisoners with severe substance (opioid) use disorder, and his approach excluded use of the MAT Program, which Congress, under the First Step Act of 2018, directed the Bureau of Prisons to expand. *Id.* at 7-8. Therefore, Smith's Section 504 RA claim against the BOP in the Amended Complaint, as supplemented may **PROCEED**.

E.  **Smith's Motion for Service is Moot**

Smith filed a motion requesting the Court serve summons and the Amended Complaint on Defendants. Motion for Service. As discussed above, the Court will grant Smith IFP status. Therefore, the Court will direct the U.S. Marshals to serve a summons and the Amended Complaint, as supplemented, D.E.s 9, 11, which contains Smith's Motion for Preliminary Injunctive Relief, on Defendants pursuant to Fed. R. Civ. P. 4(c)(3). Therefore, the Court will **DISMISS** Smith's Motion for Service as **MOOT**. The Court will **ADMINISTRATIVELY TERMINATE** Smith's Motion for Preliminary Injunctive Relief pending Defendants' appearance in this action.

IV.     CONCLUSION

For the reasons stated above, the Court will: (1) grant Smith's IFP application; (2) dismiss Count II under the Eighth Amendment against the Supervisor Defendants *without prejudice*; (3) proceed Count II under the Eighth Amendment against Dr. Dimonte; (4) dismiss Count I under the ADA *with prejudice*; (5) proceed Count III under Section 504 of the RA against the BOP; (5) direct service of the Amended Complaint, as supplemented, on Defendants Dr. Dimonte and the BOP; and (6) administratively terminate Smith's motion for preliminary injunctive relief. An appropriate Order accompanies this Opinion.


Dated: 12/20/2024

_____
Evelyn Padin, U.S.D.J.